IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN P. MILLER and ) | |
| TERESE A. MILLER ) | |
| ) | |
| v. ) | Case No.   06 C 3573 |
| ) | |
| JAMES G. HERMAN, individually, and ) | Judge Andersen |
| JAMES G. HERMAN & ASSOCIATES, ) | |
| INC., an Illinois corporation, and ) | Magistrate Judge Denlow |
| PELLA PRODUCTS, INC., a Delaware ) | |
| Corporation, sometimes called ) | |
| PELLA WINDOWS AND DOORS, INC.,) | |
| a Delaware corporation. ) | |

**PLAINTIFFS' RESPONSE TO HERMAN'S MOTIONS TO DISMISS**

The Plaintiffs, JOHN P. MILLER and TERESE A. MILLER (the "Millers"), through Counsel, Thomas R. Stilp and Charles E. McElvenny of Messer & Stilp, Ltd., a Professional Corporation, state as their Response to the Herman Defendants' Motions to Dismiss[1] as follows.

**WINDOWS ARE "CONSUMER PRODUCTS"**

Defendant James G. Herman & Associates, Inc. argues windows are not "consumer products" under the Magnuson-Moss Warranty Act, 15 U. S. C. §2301 *et seq*. Defendant is mistaken and, therefore, its Motion to Dismiss should be denied.[2]

The Magnuson-Moss Act defines "consumer product" as:

---

[1] Although the Defendant does not specify which claims are subject to its Motion to Dismiss, only one, Count V, is a claim against Herman under the Manguson-Moss Warranty Act for defective windows and, therefore, only Count V could be the subject of Defendant's Motion.

[2] The other Defendant, Pella Windows and Doors, Inc./Pella Products, Inc. has answered the Complaint, and is not raising the fact that its own windows are not "consumer products." As in the Complaint, the term "windows" refers collectively to the Pella Products supplied to the Millers. (*See* Compl't Par. 12)

> "The term 'consumer product' means any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes (**including any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed**)."

15 U. S. C. §2301(1) (all emphasis in statutes or regulations is added). Windows are tangible personal property. By this definition, the fact windows are purchased and later installed into a home does not alter the "consumer product" nature of the windows. Were it otherwise, as the Defendant would have it, as soon as an item touched, was installed upon or became a fixture in real estate, the Manguson-Moss Act would lose all power to protect the consumer. Such a distinction offered by the Defendant is artificial and specifically rejected by the Act.

The concept is further borne out by a simple juxtaposition: if a window were just sitting by itself, the Act would apply whereas, according to the Defendant's argument, once the same window is incorporated and used for its ordinary and well-known purpose (that is, in a home), ironically the window is no longer subject to the Act. Congress saw no such distinction and said so in Section 2301(1) above.

The Federal Trade Commission says about the Act:

> "The Act applies to written warranties on tangible personal property which is normally used for personal, family, or household purposes. This definition includes property which is intended to be attached to or installed in any real property without regard to whether it is so attached or installed. . . . Where it is unclear whether a particular

product is covered under the definition of consumer product, **any ambiguity will be resolved in favor of coverage**."

16 CFR §700.1(a).  Along these lines, Section 700.1(c) provides:

> "The definition of 'consumer product' limits the applicability of the Act to personally property, **including any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed**."

The Act has a different concept of personalty than the traditional real estate law of fixtures. The House Report on the Act provides:

> "Under concepts of property law, fixtures such as hot water heaters and air conditioners when incorporated in a dwelling become a part of the real property. It is intended that the provisions of [the Act] continue to apply to such products regardless of how they are classified [under traditional common law distinctions]."

H.Rep. No. 1107, 93rd Cong. 2d Sess., reprinted din 1974 U.S. Code Cong. & Admin. News 7702, 7717, quoted by <u>Muchinsky vs Frederic Roofing Co.</u>, 838 S.W. 2d 74, 77.

According to the FTC's interpretation, windows <u>are</u> "consumer products," with an exception -- windows are not "consumer products" if they are already "integrated" into the home "at the time of sale." Section 700.1(e) explains:

> "The numerous products which go into the construction of a consumer dwelling are all consumer products when sold 'over the counter,' as by hardware and building supply retailers. This is also true where a consumer contracts for the purchase of such materials in connection with the improvement, repair, or modification of a home (for example, paneling, dropped ceilings, siding, roofing, **storm windows**, remodeling). <u>However</u>, where such products are

3

> **at the time of sale integrated into the structure** of a dwelling they are not consumer products as they cannot be practically distinguished from realty."

Congress drew a line contemplated by the statute to separate personalty, which is covered by the Act, and realty, which is not. But the problem of distinguishing personalty from realty is non-existent with the windows because as stated in the Millers' Complaint, Pella Windows recognizes the ability to remove and replace windows as part of its warranty. (See Compl't Par. 14 and Exs. B and C) For example, Pella Windows admits in an exhibit attached to the Complaint that: "On May 11, 2005, we sent two Pella representatives to your residence to remove and reinstall a 2003 Proline casement unit in your basement at your request. . . . After the unit was removed, it did appear to have water damage at the top right side of the opening as viewed from the exterior of the house." (See Compl't Ex. D) According to Pella Window's statements quoted in the Complaint, the windows may be integrated into the home, but also may be removed, examined independently and replaced.

Somewhat like the Uniform Commercial Code, the Act may apply to construction contracts if (1) the product is purchased for attachment or installation to real property or a structure, and (2) the product is normally used for personal, family or household purposes. These products may include paneling, dropped ceilings, siding, roofing, **storm windows**, furnaces, water heaters, appliances, thermal, mechanical or electrical equipment, "over the

4

counter" products and other similar products that may be the subject of a construction contract. 16 C.F.R. §700.1(c), (d), (e).

The Millers' lawsuit alleges that Herman purchased "fixed and casement windows" manufactured by Pella Windows. (Compl't, Para. 12). Herman is a "supplier" under the Act. (See Compl't Par. 60). The Act defines as "supplier" as:

> "The term 'supplier' means any person engaged in the business of making a consumer product directly or indirectly available to consumers."

15 U. S. C. §2301(4). The Complaint does not simply suggest the possibility of a lack of integration of windows and the real estate at the time of sale, but leaves no other interpretation.[3]

The Complaint states Herman is a supplier of defective windows:

### *Defective Product*

31. "The exterior of the Windows purchased by the Millers are covered or clad with a low-maintenance painted aluminum. Although the wood is not visible from the outside, both the sash and the frame of the window are constructed of wood, not aluminum.

32. "On information and belief, the Millers state that:

   a. the wooden portion of the aluminum clad wood windows is dipped in a water-repellant preservative;

---

[3] Even the other Defendant, Pella Windows, does not challenge whether its windows are "consumer products" or even whether the windows leaked (although Pella denies whether the windows themselves were defective).

5

    b.    the preservative repellant treatment will not protect the wooden portion of the aluminum clad wood window from extended water exposure;

    c.    the aluminum clad wood windows are manufactured and designed with an upper facing seam that allows water to collect and eventually enter the space between the aluminum cladding and the wooden sash;

    d.    butyl sealant is applied to seal the upward facing seam to prevent water from entering the space between the aluminum cladding and the wooden sash;

    e.    the butyl sealant deteriorates when exposed to water for extended periods of time;

    f.    deterioration of the butyl sealant allows water to enter the space between the aluminum cladding and the wooden sash;

    g.    the wooden sashes of the aluminum clad wood windows purchased by the Millers are deteriorating and experiencing premature wood rot due to water damage.

33.    "The Millers would not have purchased the aluminum clad wood windows had they known or been informed of the latent, undiscoverable defect regarding the sash."

(Compl't, Paras. 31-33)    The Millers are suing Herman for **defective windows**, not a defective home. (Compl't, Count V)[4] Consequently, the Millers are not suing Herman under Magnuson – Moss for services, and the Millers are not

---

[4] For example, the Millers state (Compl't Paras. 60-61):

"60.    Herman is a supplier and warrantor as defined in the Warranty Act, 15 U.S.C. § 2301 (4) and (5).

61.    The **windows** purchased by the Millers were subject to an implied warranty of merchantability as defined in 15 U.S.C. § 2301(7) and 810 ILCS 5/2-314(2)(c), running from **Herman** to the intended consumer because **windows are consumer goods** distributed in commerce that are normally used for personal, family, or household purposes."

suing Herman under Maguson- Moss for the real estate (i.e., the home), but have sued Herman under Count V for the defective <u>windows</u>.

The leading case that allows application of the Magnuson-Moss Warranty Act to construction contracts is <u>Muchinsky vs Frederic Roofing Co.</u>, 838 S.W. 2d at 78 (Mo. App. Ct. 1992), wherein the court allowed breach of warranty claims on a roofing project, and focused on integration at the time of purchase by the contractor:

> "If 'time of sale' is interpreted as the time that a binding contract between the consumer and the supplier has been entered into then the consumer would have a remedy under the act because at that time the product warranted has not yet been integrated into the real estate. We believe the latter interpretation is the one intended by the regulations. The presence of subsection (f) indicates that the Commission was utilizing 'time of sale' as the entry into a commitment not the completion of the obligation. Otherwise subsection (f) is unnecessary. We further note that any question of whether a product is covered by the act is to be resolved in favor of coverage."

<u>Muchinsky</u> was recently followed by <u>California in Atkinson vs Elk Corp.</u>, 142 Call. App. 4th 212, 225, 48 Cal. Rptr. 3d 247 (Aug. 2006):

> "The <u>Muchinsky</u> court conducted as in-depth analysis of 16 Code of Federal Regulations part 700.1(e) and (f) and concluded that it was 'apparent from the FTC regulations that products intended to be attached to or installed in any real property are consumer products subject to the act'."

Under the Defendant's reasoning, however, the law would offer the public only the completely asinine and ludicrous result that a consumer who purchases a component for a home, such as roofing, windows or a major kitchen appliance, is

7

protected, whereas a consumer who allows any of those items to be actually installed in a new home loses all protection. Recall, the Millers are not seeking application of Magnuson Moss to a completed house, but to the defective windows that were eventually installed in that house. Given the requirement to resolve all doubts in favor of coverage, the Defendant's Motion should be denied.

## DEFENDANT JAMES HERMAN IS PERSONALLY LIABLE

Defendant James G. Herman entered into an oral contract with the Millers and received a $20,000 check in his name alone. Because the burden of disclosing the corporate entity is on the Defendant when dealing with the Millers, the Defendant's Motion to Dismiss for lack of personal liability should be denied.

The Millers attached as Exhibit "A" to the Complaint their check no. 447 dated April 24, 2003 drawn on American Airlines Credit Union payable to the order of "Jim Herman." Defendant Herman now argues he was acting simply as the agent for James G. Herman & Associates, Inc., but he failed to disclose his principal and accepted a check for a substantial sum in his own name personally.

Separate and apart from Herman's failure to disclose his corporate status at the time of contracting, Herman is also being sued for concealing the defective windows, which he successfully got away with until the leaking became so bad that one of the Millers' children had to be hospitalized. (*See* Compl't Count III –

Consumer Fraud and Deceptive Business Practices, Count IV – Fraud)[5]  Surely these actions are not legitimate corporate actions.  Fraud is not an authorized corporate act.  Illinois law requires that a person is individually liable if he exercises corporate power without the authority to do so:

> "805 ILCS 5/3.20   Unauthorized assumption of corporate powers. All persons who assume to exercise corporate powers without authority so to do shall be jointly and severally liable for all debts and liabilities incurred or arising as a result thereof."

The intention of the parties controls a determination of personal liability and such intention must be gathered from the facts and circumstances shown by the evidence.  <u>Deerpath Investment, Inc. vs Barack</u>, 112 Ill. App. 3d 692, 68 Ill. Dec. 353, 445 N.E.2d 1206, 1208 (2nd Dist. 1983).

## CONCLUSION

Motions to dismiss are useful to weed out cases where a plaintiff clearly cannot prevail, cases where it is clearly apparent that no set of facts can be proven which will entitle a plaintiff to recovery.  This is not one of those cases.  The Millers' Complaint contains far more than notice pleading requires, and has limited the Magnuson-Moss Act claim against Herman to defective windows, a "consumer product" under the Act.  The Motions to Dismiss, therefore, should be denied.

---

[5] Simply put, good windows, working properly, do not leak. The Millers' home leaks and is contaminated with mold, resulting in injury to both property and persons (for example, the Millers' daughter has suffered at least severe asthma attacks resulting in an emergency room visit, Compl't Par. 22).

9

        Respectfully Submitted,
        Chester Bros. Machined Products, Inc.

        /s/ Thomas R. Stilp

Thomas R. Stilp
Attorney #06198439
Messer & Stilp, Ltd.
166 W. Washington, Suite 300
Chicago, IL 60602
(312) 334-FIRM (3476)
(312) 334-3434 (Fax)
stilp@messerstilp.com