IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| JOHN P. MILLER and TERESE A. MILLER, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 06 C 3573 |
| v. | ) | |
| | ) | Hon. Wayne R. Andersen |
| JAMES G. HERMAN, individually, and | ) | Magistrate Judge Morton Denlow |
| as JAMES G. HERMAN & ASSOCIATES, | ) | |
| INC., an Illinois Corporation, and | ) | |
| PELLA PRODUCTS, INC., a Delaware | ) | |
| Corporation, sometimes called PELLA | ) | |
| WINDOWS AND DOORS, INC., a Delaware | ) | |
| Corporation. | ) | |
| Defendants. | ) | |
| _____ | ) | |
| PELLA PRODUCTS, INC., a Delaware | ) | |
| Corporation, sometimes called PELLA | ) | |
| WINDOWS AND DOORS, INC., a Delaware | ) | |
| Corporation. | ) | |
| Cross-Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES G. HERMAN, individually, and as | ) | |
| JAMES G. HERMAN & ASSOCIATES, INC., | ) | |
| | ) | |
| Cross-Defendants. | ) | |
| _____ | ) | |
| PELLA PRODUCTS, INC., a Delaware | ) | |
| Corporation, sometimes called PELLA | ) | |
| WINDOWS AND DOORS, INC., a Delaware | ) | |
| Corporation. | ) | |
| | ) | |
| Third Party Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| JOSEPH NOBILIO CARPENTERS | ) | |
| | ) | |
| Third Party Defendant. | ) | |

**JAMES G. HERMAN and JAMES G. HERMAN & ASSOCIATES, INC.'S
MEMORANDUM IN SUPPORT OF MOTIONS FOR DISMISSAL DUE TO LACK OF
SUBJECT MATTER JURISDICTION AND FOR SUMMARY JUDGMENT**

Defendants, JAMES G. HERMAN and JAMES G. HERMAN & ASSOCIATES, INC.'s (collectively referred to herein as "Herman") state in support of their motions to dismiss for lack of subject matter jurisdiction and for summary judgment as follows:

### FRCP 12(b)(1) Motion

On April 27, 2007 this Court denied Herman's motion to dismiss based on lack of subject matter jurisdiction. Herman's argument was based on the contention that the Magnuson-Moss Warranty Act did not apply to a dispute arising out of a contract for the new construction of a single family home which Herman contended was not a contract for the sale of a "consumer products." While this Court denied that motion, since the Court's order, the Illinois Appellate Court for the First District of Illinois has issued an opinion holding that an allegation of installation of faulty windows as part of a contract for construction of a new home is not a claim for "consumer products" under the Magnuson Moss Warranty Act. *Weiss v. MIHome Products, Inc.*, __ N.E.2d __, 2007 WL 2579830 (1st Dist. September 7, 2007) (rehearing denied November 21, 2007) (copy attached hereto as Exhibit A.)

While not binding on this Court, the *Weiss* case is persuasive authority. As such, Herman respectfully requests that the Court review and reconsider its prior holding and dismiss this action for lack of subject matter jurisdiction.

### FRCP 56(b) Motion for Summary Judgement

In the event that the Court holds that it has subject matter jurisdiction over this matter, summary judgment is still appropriate against the Millers' claims. The Millers complaint amounts to the contention that Herman defectively constructed their home. Even if true, the Millers' remedy would be the cost to repair the alleged defects. Here, it is undisputed that

Herman offered to repair any defects in the Millers' home and that the Millers rejected that offer thus mooting and waiving their claims.

Finally, the Millers' claim for consumer fraud is barred by well-settled law that holds that the Illinois Consumer Fraud Act does not provide a remedy when all that is at dispute is a private contract dispute which does not generally involve other consumers.

## UNDISPUTED MATERIAL FACTS

On or about April 24, 2003 John and Therese Miller contracted with James G. Herman & Associates, Inc, an Illinois corporation ("Herman, Inc."), for the construction of a custom single family home. (SOF at ¶ 5.)[1] By January of 2004, the home was substantially complete and the Millers had moved into their new residence. (SOF at ¶ 6.) On April 22, 2004, several months after the Millers had moved in, John Miller called Herman, Inc. and complained that he believed that there was a leak on the east side of his home and that he believed there was mold growing as a result of this issue. (SOF at ¶ 7.)

Immediately upon receiving the complaint, Herman, Inc. agreed to address the complaints although also concluding the problems were not significant. (SOF at ¶ 8.) Thereafter Herman cleaned up the mold and tested the house for leaks. (*Id.*) Although the water testing did not disclose any leaks, Herman, Inc. also provided caulking at locations requested by John Miller. (*Id.*)

By April 24, 2004, Herman, Inc. had completed the additional work at the Millers' home. (SOF at ¶ 9.) On the afternoon and night of April 24, 2004, there were rain storms throughout the vicinity of the Millers' house. (*Id.*) Having experienced no further problems, John Miller left

---

[1] All references to "SOF" are to Herman's and Herman, Inc.'s Local Rule 56.1(a) Statement of Material Facts for Which There Are No Genuine Issues.

a message the next day with Herman stating that there had been no leaking during the storms and thanked Herman, Inc. for addressing his complaints. (*Id.*)

To further make sure the leak issues had been addressed, during the summer and early fall of 2004, Herman, Inc. did not reinstall insulation which it had removed so that Mr. Miller could monitor for any additional leaks. (SOF at ¶ 9.) Then, after John Miller told Herman that there had been no further leaks during the fall of 2004, Herman, Inc. re-installed the insulation that had been previously removed. (*Id.*)

From the fall of 2004 through April 8, 2005, Herman heard no further complaints from the Millers. (SOF at ¶ 11.) On April 8, 2005, however, John Miller called Herman and complained of a suspected window leak on the east side of his house which had occurred as a result of a major rainstorm the night before. (*Id.*) Despite believing that Herman, Inc. no longer had any responsibility, Herman, Inc. informed Mr. Miller that it would send a work crew over to inspect the leaks and perform any necessary repairs. (*Id.*)

Thereafter, Herman, Inc. scheduled a work crew to investigate and repair the alleged leaks for April 18, 2005. (SOF at ¶ 12.) However, when the work crew showed up to do the work on April 18, 2005, John Miller refused to allow them access to his home to perform the repairs. (*Id.*)

On April 28, 2005, Herman, Inc.'s counsel sent a letter to John Miller informing him that despite his rejection of the work crew on April 18, 2005, Herman continued to be willing to perform repairs on the Millers home and that Mr. Miller needed to contact Herman to reschedule the work. (SOF at ¶ 13.) Despite this offer, the Millers instead filed this suit. (SOF at ¶ 14.)

Finally, the manufacturer of the allegedly defective windows, Pella Products, Inc., also offered to replace and/or repair the windows alleged. (SOF at ¶ 15.) The Millers have also rejected this offer. (SOF at ¶ 15.)

## ARGUMENT

**I)** **The Miller's Claims Against Herman Are Barred By Mootness and Waiver**

The measure of damages for alleged faulty construction is typically the cost of repair. *Arch of Illinois, Inc. v. S.K. George Painting Contractors, Inc.,* 288 Ill. App. 3d 1080, 1082, 681 N.E.2d 1049, 1050 (5th Dist. 1997)("It is well settled in Illinois that the **measure** of **damages** for a **breach** of **contract** when a builder has provided less than full performance or has provided defective performance is generally the cost of correcting the defective condition.").

In this matter, Herman offered Miller during the Spring of 2005 to provide the full remedy he was due by offering to address his complaints of faulty construction at Herman's cost. Instead, of taking this offer, Miller turned away Herman's work crew and instead eventually filed this suit.[2] Further demonstrating that the Millers are attempting to create a dispute that should not otherwise exist, they have even rejected Pella's offer to repair and/or replace the allegedly defective windows in their home.

Under this set of facts, summary judgment should be entered against the Miller's claims as they are moot and otherwise barred by principles of waiver.

Mootness is applicable because Herman offered to provide the Millers, over a year prior to this suit with the full remedy they would have been entitled to thus eliminating any controversy. *Huss v. Sessler Ford,* 343 Ill. App. 3d 835, 841, 799 N.E.2d 444, 449 (1st Dist.

---

[2] Another issue raised by the Miller's conduct is whether whatever conditions that existed in April of 2005 – when repair was offered – remain the same today or have been exacerbated by the passage of time.

2003) ("when a defendant unconditionally tenders the full amount owed to a plaintiff prior to a lawsuit being filed, no controversy exists between the parties and any lawsuit is rendered moot."). By rejecting Herman's offer out of hand, the Miller's rendered this matter moot.

For example, in *Hayman v. Autohaus on Edens, Inc.,* 315 Ill. App. 3d 1075, 1078, 734 N.E.2d 1012, 1015 (1st Dist. 2000), the appellate court affirmed dismissal of a class action against an auto dealership involving alleged hidden charges. The dealership, although admitting no liability but having "second thoughts about its treatment of customers" sent a check to the plaintiff for the full payment of the amount in dispute; the plaintiff refused to accept the tender, yet both the trial court and appellate court affirmed: "Because full payment, not a compromise, was offered to Hyman, thus mooting the controversy, the plaintiff had no right to recover compensatory damages in the trial court." *Id*.

Likewise, the Miller's conduct of refusing the remedy offered by Herman establishes a waiver of any right to file suit on the claim. *JH Cohn & Co. v. American Appraisal Assocs.*, 628 F.2d 994, 1000 (7th Cir. 1980) ("If an individual intentionally relinquishes a known right, either expressly or by conduct inconsistent with an intent to enforce that right, he has waived it.").

## II)     The Miller's Claim Of Consumer Fraud Fails As A Matter of Law.

Count III of the Millers' Complaint alleges a violation of the Illinois Consumer Fraud Act ("ICFA"). Because the standard for proving a consumer fraud claim is lower than for proving a common law fraud claim, and because of the danger of parties attempting to recover through a consumer fraud claim what they could not recover through a breach of contract claim, Illinois Courts have repeatedly struck down as a matter of law (on both motions for summary judgment and motions to dismiss) attempts to plead a consumer fraud claim when all that is really at issue is a private dispute that has no danger of affecting consumers at large.

For example, in *Bankier v. First Federal Savings & Loan,* 225 Ill. App. 3d 864, 588 N.E.2d 391 (4th Dist. 1992), the Illinois Appellate Court upheld summary judgment against two individual borrowers who attempted to plead an ICFA claim against their bank for charging a pre-payment penalty. The *Bankier* Court noted that "[e]very individual breach of contract between two parties does not amount to a cause of action cognizable under the Act." *Bankier,* 225 Ill. App. 3d at 874, 588 N.E.2d at 398. Furthermore, the *Bankier* Court noted: "the Act is intended to reach practices of the type which affect consumers generally and is not available as an additional remedy to address a purely private wrong." *Bankier,* 225 Ill. App. 3d at 875, 588 N.E.2d at 398.

In *Exchange National Bank v. Farm Bureau Life Insurance Company,* 108 Ill. App. 3d 212, 438 N.E.2d 1247 (3rd Dist. 1982), the Illinois Appellate Court upheld dismissal of an ICFA claim brought by two trust beneficiaries against a lender. The *Exchange* Court held that ICFA did not apply to "every situation where, as in the cause at bar, the only actual controversy is whether an isolated breach of contract occurred" and where the ICFA claim is "far-fetched." *Exchange,* 108 Ill. App. 3d at 215, 438 N.E.2d at 1250. In the *Exchange* case the plaintiffs' theory was that the lender entered a mortgage contract with the plan of breaching the agreement to extort money from the plaintiffs and that the defendants "concealed" their intention by granting extensions of the mortgage. *Exchange,* 108 Ill. App. 3d at 215-16, 438 N.E.2d at 1250. The Appellate Court held that these allegations were "contrived" and commercially "ridiculous." *Id.* Finally, the Court noted because there was no allegation that the practices alleged by the plaintiffs were part of a "pattern of defendants' lending activities" the ICFA claim failed to state a cause of action. *Id.*

In *Cruthis v. Firstar Bank,* 354 Ill. App. 3d 1122, 822 N.E.2d 454 (5th Dist. 2004) an Illinois Appellate Court reversed the trial court's determination of liability on an ICFA claim based on a bank's unauthorized removal of funds from a bank account. Noting that ICFA is not

7

intented to address purely private wrongs, the Appellate Court held that the wrong alleged "was an individual, isolated incident, was a purely private wrong between two parties and did not affect consumers generally." *Cruthis,* 822 N.E.2d at 466.[3]

The foregoing decisions all come down to the proposition that if any dispute is purely between two private contracting parties and the dispute does not have the potential of repetition against other consumers the Illinois Consumer Fraud Act simply does not apply.

Here, the dispute between the Millers and Herman is purely a private one and the type of conduct alleged by the Millers has absolutely no impact on consumers generally and thus is subject to summary judgment.

---

[3]The Seventh Circuit Courts when dealing with ICFA claims have followed the foregoing precedent. *Athey Products Corporation v. Harris Bank Roselle,* 89 F.3d 430, 436-37 (7th Cir. 1996). The *Athey* Court also confirmed that the 1990 amendment to the Act stating that "proof of a public injury, a pattern, or an affect on consumers generally shall not be required," had been interpreted by Illinois Court to only signify that a single injury could provide the basis for a consumer fraud claim, but had not altered the requirement stated in the foregoing cases that a party must still prove that their claim implicates consumer protection concerns. *See, also, Central Diversey v. Medical Management Sciences, Inc.,* 952 F. Supp. 575, 578 (N.D. Ill. 1996) (noting that any plaintiff alleging a breach of contact claim must show that the claim implicates consumer concerns to be actionable under ICFA).

**WHEREFORE,** JAMES G. HERMAN and JAMES G. HERMAN & ASSOCIATES, INC. request that either this matter be dismissed for lack of subject matter jurisdiction or that summary judgment be entered in their favor and against plaintiffs John and Therese Miller and for any further relief this court deems just.

>Respectfully submitted,
>
>JAMES G. HERMAN and
>JAMES G. HERMAN & ASSOCIATES, INC.

By:  /s/ Edwin L. Durham
>Edwin L. Durham (# 6204142)
>Michael Rachlis (#6203745)
>Marion B. Adler (#6182504)
>Rachlis Durham Duff & Adler, LLC
>542 S. Dearborn Street, Suite 900
>Chicago, Illinois 60605
>Phone: (312) 733-3950
>Fax: (312) 733-3952
>edurham@rddlaw.net
>mrachlis@rddlaw.net
>madler@rddlaw.net

# Exhibit A

Westlaw.

--- N.E.2d ----                                                                                          Page 1

--- N.E.2d ----, 2007 WL 2579830 (Ill.App. 1 Dist.), 63 UCC Rep.Serv.2d 897
**(Cite as: --- N.E.2d ----)**

**H**
Weiss v. MI Home Products, Inc.
Ill.App. 1 Dist.,2007.

Appellate Court of Illinois,First District, Fifth Division.
Sharon WEISS and Mitchell Weiss, Individually and on Behalf of All Others Similarly Situated, Plaintiffs-Appellants,
v.
MI HOME PRODUCTS, INC., Defendant-Appellee.
No. 1-06-0753.

Sept. 7, 2007.
Rehearing Denied Nov. 21, 2007.

**Background:** Townhome owners brought action against manufacturer of faulty windows, seeking to enforce the terms of the applicable written warranty under the statutory standards set forth in the Magnuson-Moss Warranty Federal Trade Improvement Act (MMWA) and Uniform Commercial Code (UCC). The Circuit Court, Cook County, Mary Anne Mason, J., dismissed complaint. Owners appealed.

**Holdings:** The Appellate Court, Tully, J., held that:

(1) windows installed to create structure were not "consumer products," within meaning of MMWA, and

(2) windows physically annexed to real estate were not "goods" within the meaning of the UCC.

Affirmed.

**[1] Statutes 361 ⇌219(1)**

361 Statutes
    361VI Construction and Operation
        361VI(A) General Rules of Construction
            361k213 Extrinsic Aids to Construction
                361k219 Executive Construction
                    361k219(1) k. In General. Most Cited Cases
The interpretation and construction of a statute by an agency charged with its administration is entitled to great weight.

**[2] Antitrust and Trade Regulation 29T ⇌208**

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(C) Particular Subjects and Regulations
            29Tk204 Warranties and Service Contracts
                29Tk208 k. Other Particular Subjects. Most Cited Cases
Windows installed to create townhouse structure were not "consumer products," within meaning of Magnuson-Moss Warranty-Federal Trade Improvement Act (MMWA). Magnuson-Moss Warranty-Federal Trade Commission Improvement Act, § 101(1), 15 U.S.C.A. § 2301(1); 16 C.F.R. § 700.1 et seq.

**[3] Sales 343 ⇌10**

343 Sales
    343I Requisites and Validity of Contract
        343k9 Personal Property Which May Be Subject of Sale
            343k10 k. Nature of Property. Most Cited Cases
Windows physically annexed to real estate were part of the real estate, and thus not "goods" within the meaning of the Uniform Commercial Code (UCC). S.H.A. 810 ILCS 5/2-105, 2-107(1).

Aron D. Robinson, The Law Office of Aron D. Robinson, Chicago, for Plaintiffs-Appellants.
William E. Spizzirri, Philip W. Domagalski, of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- N.E.2d ----                                                                          Page 2

--- N.E.2d ----, 2007 WL 2579830 (Ill.App. 1 Dist.), 63 UCC Rep.Serv.2d 897
**(Cite as: --- N.E.2d ----)**

Kralovek & Marquard, Chtd., Chicago, for Defendant-Appellee.

Justice TULLY delivered the opinion of the court:

*1 This appeal arises from the dismissal of plaintiffs' complaint. The plaintiffs, Sharon and Mitchell Weiss, filed a complaint against the defendant, MI Home Products, under various theories of breach of warranty and for a declaratory judgment. The plaintiffs are the original owners of their townhome and they allege that numerous windows manufactured by the defendant and installed in their home failed and fogged. The plaintiffs allege that some of the windows were replaced by the defendant under a warranty but that defendant failed to pay the costs for shipping and installation of the replacement windows. Plaintiffs further allege that the defendant refuses to replace other failed window units in the residence, claiming the warranty on those units has expired.

Plaintiffs have attached two warranties to their pleadings. The first is a copy of the warranty the plaintiffs received from another townhome owner and indicates "Rev 1/98". The other is a warranty produced by the defendant during the course of this litigation and represented to be the warranty applicable to the windows at issue.

The first warranty obtained by plaintiffs from another homeowner states as follows with regard to insulated windows:

"LIMITED MANUFACTURERS' WARRANTY
INSULATED GLASS UNIT. 10 years from date of installation, the insulating glass units will be free of obstruction of vision as a result of dust or film formation on the internal surfaces caused by failure of the hermetic seal due to faulty manufacture under conditions of normal use and service. THE MANUFACTURER will assume 100% of the cost of the replacement glass within the first ten years. * * * Replacement material may be picked up at THE MANUFACTURER'S factory, or at any designated distribution point. * * * This warranty covers material only and THE MANUFACTURER does not assume any expense involved with the removal or reinstallation of any replacement parts."

The second warranty produced by the defendant states that the "Limited Lifetime Warranty" does not extend to insulated glass and specifically states that insulated glass is covered under separate warranty. The section which applies to insulated glass states as follows:

"INSULATED GLASS (Limited 10 Year Warranty)
Capitol Windows and Doors, a Division of Metal Industries, Inc. of California warrants that for a period of ten (10) years from the date of manufacture (as marked on the insulated glass separator channels to which this limited warranty applies) that the lite(s) will be free from material obstruction of vision as a result of dust or film formation on the internal glass surfaces caused by failure of the hermetic seal due to faulty manufacture of the lite(s) by the manufacturer.

* * *

In the event that the insulated glass lite(s) fail to conform to the Manufacturer's limited warranty previously described, the Manufacturer will, at its option, furnish the Purchaser with another insulated glass lite(s), FOB nearest the Manufacturer's shipping point, or refund the purchase price of the insulated glass lite(s).

*2 The Manufacturer will bear no other expense (i.e. labor costs of any kind) and the Purchaser's exclusive remedy, in lieu of all incidental, special, or consequential damages, including damages, is limited to a refund or the furnishing of another product as heretofore described."

The plaintiffs are the original owners and purchased their townhome in 1994. They allege they replaced windows with failed seals in 2000, 2001 and the spring and summer of 2004. These windows were replaced free of charge; however, the plaintiffs allege defendants failed to pay for labor and shipping costs. The plaintiffs further allege that the windows are "consumer products" as defined in the Magnuson-Moss Warranty Federal Trade Improvement Act, (15 U.S.C. § 2301*et seq.* (2000)) and "goods" as defined in the Uniform Commercial Code (810 ILCS 5/2-105(1) (West 2006)). Plaintiffs seek to enforce the terms of the applicable written warranty under the statutory standards set forth in the Magnuson-Moss Warranty Federal Trade Improvement Act (MMWA) and Uniform Commercial Code (UCC). Plaintiffs argue these

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- N.E.2d ----                                                                                                                                Page 3

--- N.E.2d ----, 2007 WL 2579830 (Ill.App. 1 Dist.), 63 UCC Rep.Serv.2d 897
**(Cite as: --- N.E.2d ----)**

standards require defendant to pay for shipping and labor costs. Plaintiffs further argue that these standards require defendant to provide a lifetime warranty. The plaintiffs claim defendant breached the warranty under the UCC and under the MMWA. The plaintiffs further claim the defendant breached the express warranty.

The plaintiffs argue that the windows at issue are a " consumer product" so that the warranty given by the defendant is covered by the MMWA. The plaintiffs do not cite authority for this position. We find no authority and conclude this is an issue of first impression. The issue is whether the windows installed in the new construction of a home are a " consumer product" as defined by the MMWA so that an action based upon a written contract for the windows of a home may lie as a matter of law where the written contract contains a 10-year defect-free warranty on workmanship and materials.

[1] The defendant has treated the regulations of the Federal Trade Commission (FTC) as evidencing the meaning of the statute where no court has interpreted its meaning. The interpretation and construction of a statute by an agency charged with its administration is entitled to great weight. *Abrahamson v. Illinois Department of Professional Regulation,* 153 Ill.2d 76, 98, 180 Ill.Dec. 34, 606 N.E.2d 1111 (1992). We will similarly treat the FTC regulations as correctly interpreting the intention of Congress.

[2] The MMWA defines "consumer product" as " any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes (including any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed.") 15 U.S.C. § 2301(1). The term "consumer" means "a buyer (other than for purposes of resale) of any consumer product, any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product, and any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract)."15 U.S.C. § 2301(3) (2000). The term "supplier" means "any person engaged in the business of making a consumer product directly or indirectly available to consumers."15 U.S.C. § 2301(4) (2000).

*3 The relevant FTC regulations are:
"(a) The Act applies to written warranties on tangible personal property which is normally used for personal, family, or household purposes. This definition includes property which is intended to be attached to or installed in any real property without regard to whether it is so attached or installed. This means that a product is a 'consumer product' if the use of that type of product is not uncommon. The percentage of sales or the use to which a product is put by any individual buyer is not determinative. For example, products such as automobiles and typewriters which are used for both personal and commercial purposes come within the definition of consumer product. Where it is unclear whether a particular product is covered under the definition of consumer product, any ambiguity will be resolved in favor of coverage.
* * *
(c) The definition of 'Consumer product' limits the applicability of the Act to personal property, ' including any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed.'* * *
* * *
(e) The coverage of building materials which are not separate items of equipment is based on the nature of the purchase transaction. An analysis of the transaction will determine whether the goods are real or personal property. The numerous products which go into the construction of a consumer dwelling are all consumer products when sold 'over the counter,' and as by hardware and building supply retailers. This is also true where a consumer contracts for the purchase of such materials in connection with the improvement, repair, or modification of a home (for example, paneling, dropped ceilings, siding, roofing, storm windows, remodeling). However, where such products are at the time of sale integrated into the structure of a dwelling they are not consumer products as they cannot be practically distinguished from realty. Thus, for example, the beams, wallboard, wiring,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- N.E.2d ----

Page 4

--- N.E.2d ----, 2007 WL 2579830 (Ill.App. 1 Dist.), 63 UCC Rep.Serv.2d 897
**(Cite as: --- N.E.2d ----)**

plumbing, windows, roofing, and other structural components of a dwelling are not consumer products when they are sold as part of real estate covered by a written warranty." 16 C.F.R. § 700. (2007)

It is apparent from the FTC regulations that products intended to be attached to or installed in any real property are consumer products subject to the MMWA Section 700.1(e) attempts to specify which products that become a part of the realty are consumer products and which are not. If the consumer contracts for the purchase of such materials in connection with the improvement, repair or modification of a home, then the materials are consumer products subject to the MMWA. However, if at the time of sale the products are integrated into the structure of the dwelling, they are not consumer products as they cannot be practically distinguished from realty.

It appears that as to products that become a part of realty, the distinction drawn is whether the product is being added to an already existing structure or whether it is being utilized to create the structure. The windows here were installed to create the structure. We conclude that the windows at issue here are not a consumer product. Accordingly, we find the plaintiffs do not have a claim under the Magnuson-Moss Warranty Act.

*4 [3] We next address whether the plaintiffs have a valid claim under the UCC. The UCC applies to all contracts for the sale of goods. The UCC defines " goods" as follows:
"(1) 'Goods' means all things, including specially manufactured goods, which are moveable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action. 'Goods' also includes the unborn young of animals and growing crops and other identified things attached to realty as described in the section on goods to be severed from realty (Section 2-107).' '810 ILCS 5/2-105 (West 2006).

Section 2-107(1) provides that in a contract for the sale of a structure or its materials, if the items are to be removed and severed from the realty by the seller, the items will be considered "goods."

Windows may be goods when they are movable objects not attached to real estate; however, when by their physical annexation to real estate they have become, in legal contemplation, part of the real estate, they are no longer goods within the meaning of the UCC. Accordingly, we find the plaintiffs do not have a valid claim under the UCC.

For the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

SHEILA M. O'BRIEN and GALLAGHER, JJ., concur.
Ill.App. 1 Dist.,2007.
Weiss v. MI Home Products, Inc.
--- N.E.2d ----, 2007 WL 2579830 (Ill.App. 1 Dist.), 63 UCC Rep.Serv.2d 897

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.