IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN P. MILLER and | ) | |
| TERESE A. MILLER | ) | |
| | ) | |
| v. | ) | Case No.   06 C 3573 |
| | ) | |
| JAMES G. HERMAN, individually, and | ) | Judge Andersen |
| JAMES G. HERMAN & ASSOCIATES, | ) | |
| INC., an Illinois corporation, and | ) | Magistrate Judge Denlow |
| PELLA PRODUCTS, INC., a Delaware | ) | |
| Corporation, sometimes called | ) | |
| PELLA WINDOWS AND DOORS, INC., | ) | |
| a Delaware corporation. | ) | |

**PLAINTIFFS' RESPONSE TO HERMAN'S AND PELLA'S MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT**

The Plaintiffs, JOHN P. MILLER and TERESE A. MILLER (the "Millers"), through Counsel, Thomas R. Stilp and John N. Bielski II of Messer & Stilp, Ltd., a Professional Corporation, state as their Response to the Motions to Dismiss and for Summary Judgment by JAMES G. HERMAN and JAMES G. HERMAN & ASSOCIATES, INC. ("Herman") and PELLA PRODUCTS, INC. and PELLA WINDOWS AND DOORS, INC. ("Pella"), as follows:

**THIS COURT HAS ALREADY RULED THAT THE WINDOWS ARE CONSUMER PRODUCTS**

This is the second time this Court has addressed the issue of whether windows are consumer products.  Herman previously filed a motion to dismiss alleging that the windows are not consumer products.   This Court rejected Herman's argument as follows:

> Defendant James G. Herman filed a motion to dismiss, alleging that he was not a party to the contract, and Defendant James G. Herman & Associates filed a motion to dismiss claiming the windows were not consumer products under the Magnuson-Moss Warranty Act….We deny Defendant James G. Herman & Associates' motion to dismiss based on our reading of the Magnuson-Moss Warranty Act….

See April 27, 2007 Order denying Herman's Motion to Dismiss. Now, almost a year later, Herman and Pella are raising the same issue previously decided by this Court. The Plaintiffs respectfully state that this Court should not alter or modify its pervious ruling and deny the Defendants' Motion to Dismiss and Motion for Summary Judgment.

## STATEMENT OF FACTS

Herman provides what he deems are undisputed facts. Plaintiff disputes most of the facts alleged by Herman. There is no dispute that the Millers contracted with Herman to build a residence, and that Pella windows were purchased, with the assistance of Herman, to be installed in the residence. (Compl't ¶¶ 6, 12). The Millers dispute that Herman substantially completed the residence, and further deny any allegation that they wrongfully prevented Herman or Pella from repairing the numerous defects in the residence. (Plaintiffs' Resp. to Defs'. Statement of Material Facts ¶ 6, 13, 14). As alleged in the Complaint, Herman merely tried to "band-aid" the water infiltration problem by caulking the house, and refused to repair or replace the windows. (Compl't ¶ 18). Further, numerous problems with the foundation and mold were required to be addressed by the Plaintiffs after the Defendants refused to provide the required repairs and necessary remedial actions. (Compl't ¶¶ 20, 22) To this day, there are still water infiltration problems and mold infestation. (Compl't ¶ 20).

**WINDOWS ARE "CONSUMER PRODUCTS"**

Herman and Pella rely on the case of <u>Weiss v. MI Home Products, Inc.</u>, 376 Ill. App.3d 1001, 877 N.E.2d 442 (2007) in reiterating the same argument that was made last year. According to Herman and Pella, this case stands for the proposition that windows installed in a residence are not a consumer product. This analysis is flawed because windows are in fact consumer products.

Herman and Pella both admit that <u>Weiss</u> is a not binding authority over this Court. This Court has previously ruled that the windows involved in this case are consumer products, and <u>Weiss</u> does not require a reversal of that ruling. The <u>Weiss</u> Court states that whether a window is a consumer product is "an issue of first impression" and that there is no authority regarding this issue. 877 N.E.2d at 444. The Plaintiffs respectfully disagree.

The leading case that allows application of the Magnuson-Moss Warranty Act to construction contracts is <u>Muchinsky v. Frederic Roofing Co.</u>, 838 S.W. 2d at 78 (Mo. App. Ct. 1992). Despite claiming that its decision was one of first impression, the <u>Weiss</u> Court did not even acknowledge this decision. In <u>Muchinsky</u>, the Court allowed breach of warranty claims on a roofing project, and focused on integration at the time of purchase by the contractor:

> "If 'time of sale' is interpreted as the time that a binding contract between the consumer and the supplier has been entered into then the consumer would have a remedy under the act because at that time the product warranted has not yet been integrated into the real estate. We believe the latter interpretation is the one intended by the regulations. The presence of subsection (f) indicates that the Commission was

3

utilizing 'time of sale' as the entry into a commitment not the completion of the obligation. Otherwise subsection (f) is unnecessary. We further note that any question of whether a product is covered by the act is to be resolved in favor of coverage."

*Muchinsky* was recently followed by California in *Atkinson vs Elk Corp.*, 142 Call. App. 4th 212, 225, 48 Cal. Rptr. 3d 247 (Aug. 2006):

"The *Muchinsky* court conducted as in-depth analysis of 16 Code of Federal Regulations part 700.1(e) and (f) and concluded that it was 'apparent from the FTC regulations that products intended to be attached to or installed in any real property are consumer products subject to the act'."

Under the Defendants' reasoning, however, the law would offer the public only the improper result that a consumer who purchases a component for a home, such as roofing, windows or a major kitchen appliance, is protected, whereas a consumer who allows any of those items to be actually installed in a new home loses all protection. Recall, the Millers are not seeking application of Magnuson Moss to a completed house, but to the defective windows that were eventually installed in that house. Given the requirement to resolve all doubts in favor of coverage, 16 CFR §700.1(a), the Defendants' Motion should be denied.

The Magnuson-Moss Act defines "consumer product" as:

"The term 'consumer product' means any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes (**including any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed**)."

4

15 U. S. C. §2301(1) (all emphasis in statutes or regulations is added). Windows are tangible personal property. By this definition, the fact windows are purchased and later installed into a home does not alter the "consumer product" nature of the windows. Were it otherwise, as the Defendants would have it, as soon as an item touched, was installed upon or became a fixture in real estate, the Manguson-Moss Act would lose all power to protect the consumer. Such a distinction offered by the Defendants is artificial and specifically rejected by the Act.

The concept is further borne out by a simple juxtaposition: if a window were just sitting by itself, the Act would apply whereas, according to the Defendant's argument, once the same window is incorporated and used for its ordinary and well-known purpose (that is, in a home), ironically the window is no longer subject to the Act. Congress saw no such distinction and said so in Section 2301(1) above.

The Federal Trade Commission says about the Act:

> "The Act applies to written warranties on tangible personal property which is normally used for personal, family, or household purposes. This definition includes property which is intended to be attached to or installed in any real property without regard to whether it is so attached or installed. . . . Where it is unclear whether a particular product is covered under the definition of consumer product, **any ambiguity will be resolved in favor of coverage**."

16 CFR §700.1(a). Along these lines, Section 700.1(c) provides:

5

> "The definition of 'consumer product' limits the applicability of the Act to personally property, **including any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed**."

The Act has a different concept of personalty than the traditional real estate law of fixtures. The House Report on the Act provides:

> "Under concepts of property law, fixtures such as hot water heaters and air conditioners when incorporated in a dwelling become a part of the real property. It is intended that the provisions of [the Act] continue to apply to such products regardless of how they are classified [under traditional common law distinctions]."

H.Rep. No. 1107, 93rd Cong. 2d Sess., reprinted in 1974 U.S. Code Cong. & Admin. News 7702, 7717, quoted by <u>Muchinsky v. Frederic Roofing Co.</u>, 838 S.W. 2d 74, 77.

According to the FTC's interpretation, windows <u>are</u> "consumer products," with an exception--windows are not "consumer products" if they are already "integrated" into the home "at the time of sale." Section 700.1(e) explains:

> "The numerous products which go into the construction of a consumer dwelling are all consumer products when sold 'over the counter,' as by hardware and building supply retailers. This is also true where a consumer contracts for the purchase of such materials in connection with the improvement, repair, or modification of a home (for example, paneling, dropped ceilings, siding, roofing, **storm windows**, remodeling). <u>However</u>, where such products are **at the time of sale integrated into the structure** of a dwelling they are not consumer products as they cannot be practically distinguished from realty."

6

Congress drew a line contemplated by the statute to separate personalty, which is covered by the Act, and realty, which is not. But the problem of distinguishing personalty from realty is non-existent with the windows because as stated in the Millers' Complaint, Pella Windows recognizes the ability to remove and replace windows as part of its warranty. (See Compl't Par. 14 and Exs. B and C) For example, Pella Windows admits in an exhibit attached to the Complaint that: "On May 11, 2005, we sent two Pella representatives to your residence to remove and reinstall a 2003 Proline casement unit in your basement at your request. . . . After the unit was removed, it did appear to have water damage at the top right side of the opening as viewed from the exterior of the house." (See Compl't Ex. D) According to Pella Window's statements quoted in the Complaint, the windows may be integrated into the home, but also may be removed, examined independently and replaced.

Somewhat like the Uniform Commercial Code, the Act may apply to construction contracts if (1) the product is purchased for attachment or installation to real property or a structure, and (2) the product is normally used for personal, family or household purposes. These products may include paneling, dropped ceilings, siding, roofing, **storm windows**, furnaces, water heaters, appliances, thermal, mechanical or electrical equipment, "over the counter" products and other similar products that may be the subject of a construction contract. 16 C.F.R. §700.1(c), (d), (e).

Pella cites <u>Mota v. Central Sprinkler Corp.</u>, 174 F. Supp. 2d 824 (C.D. Ill. 2001) for its proposition that windows in a residence are not consumer products. The fire sprinklers that were the subject of <u>Mota</u> were not deemed consumer products for a number of reasons that are not applicable here. First, the sprinklers were not even available for purchase to the general public or "over-the-counter." <u>Mota</u>, 174 F. Supp. 2d at 831. Second, the sprinklers were installed in government correctional facilities, mental institutions and offices. <u>Id.</u> Clearly, the sprinklers were not intended for, and were not used for, public consumer use. <u>Mota</u> is not applicable to the case at bar.

The Millers' lawsuit alleges that Herman purchased "fixed and casement windows" manufactured by Pella Windows. (Compl't, Para. 12). Herman is a "supplier" under the Act. (See Compl't Par. 60). The Act defines as "supplier" as:

> "The term 'supplier' means any person engaged in the business of making a consumer product directly or indirectly available to consumers."

15 U. S. C. §2301(4). The Complaint does not simply suggest the possibility of a lack of integration of windows and the real estate at the time of sale, but leaves no other interpretation.

The Complaint states Herman is a supplier of defective windows:

*Defective Product*

31. "The exterior of the Windows purchased by the Millers are covered or clad with a low-maintenance painted aluminum. Although the wood is not visible from the

8

  outside, both the sash and the frame of the window are constructed of wood, not aluminum.

32. "On information and belief, the Millers state that:

 a. the wooden portion of the aluminum clad wood windows is dipped in a water-repellant preservative;

 b. the preservative repellant treatment will not protect the wooden portion of the aluminum clad wood window from extended water exposure;

 c. the aluminum clad wood windows are manufactured and designed with an upper facing seam that allows water to collect and eventually enter the space between the aluminum cladding and the wooden sash;

 d. butyl sealant is applied to seal the upward facing seam to prevent water from entering the space between the aluminum cladding and the wooden sash;

 e. the butyl sealant deteriorates when exposed to water for extended periods of time;

 f. deterioration of the butyl sealant allows water to enter the space between the aluminum cladding and the wooden sash;

 g. the wooden sashes of the aluminum clad wood windows purchased by the Millers are deteriorating and experiencing premature wood rot due to water damage.

33. "The Millers would not have purchased the aluminum clad wood windows had they known or been informed of the latent, undiscoverable defect regarding the sash."

(Compl't, Paras. 31-33) The Millers are suing Herman and Pella for **defective windows**, not a defective home. (Compl't, Count V)[1] Consequently, the Millers

---

[1] For example, the Millers state (Compl't Paras. 60-61):

9

are not suing the Defendants under Magnuson – Moss for services, and the Millers are not suing the Defendants under Magnusson-Moss for the real estate (i.e., the home), but have sued the Defendants for the defective <u>windows</u>.

Nothing contained in the motions of Pella and Herman justifies a reversal of the prior decision of this Court. This Court has previously ruled that the windows are consumer products. Nothing contained in the motions changes this fact. Herman's Motion to Dismiss and Motion for Summary Judgment, and Pella's Motion for Summary Judgment should be denied.

**THE CONSUMER FRAUD ACT IS APPLICABLE TO THE CASE AT BAR**

Herman alleges that the cases of <u>Bankier v. First Federal Savings & Loan</u>, 225 Ill. App.3d 864, 588 N.E.2d 391 (1992) and <u>Exchange National Bank v. Farm Bureau Life Insurance Co.</u>, 108 Ill. App.3d 212, 438 N.E.2d 1247 (1982) stand for the proposition that the Millers cannot claim damages for consumer fraud because their claim is private and only implicates contractual concerns. The argument and the cases Herman relies on are thoroughly rejected by the Court in <u>Falcon Assoc., Inc. v. Wolfe</u>, 298 Ill. App.3d 652, 699 N.E.2d 203 (1998). The Millers are allowed, and in fact have plead, claims for damages under the Consumer Fraud Act.

---

"60. Herman is a supplier and warrantor as defined in the Warranty Act, 15 U.S.C. § 2301 (4) and (5).

61. The **windows** purchased by the Millers were subject to an implied warranty of merchantability as defined in 15 U.S.C. § 2301(7) and 810 ILCS 5/2-314(2)(c), running from **Herman** to the intended consumer because **windows are consumer goods** distributed in commerce that are normally used for personal, family, or household purposes."

10

*Wolfe* involved disputes over the construction of a new residence valued at $227,387.54. 699 N.E.2d at 204. The individual owners claimed damages on the grounds of, *inter alia*, breach of contract and consumer fraud. Id. The trial court entered judgment against the owners and in favor of the builder on the consumer fraud count. Id. at 208. In rendering judgment, the trial court relied on the exact same cases cited by Herman, *Bankier* and *Exchange National*. The trial court held that consumer fraud was not warranted because the homeowner's claim was "essentially a breach of contract case." Id. at 210.

The appellate court reversed the trial court and dismissed the court's reliance on *Bankier* and *Exchange National*. In rejecting the trial court's holding (and Herman's argument), the appellate court held that *Bankier* and *Exchange National* were distinguishable because "neither case involved the sale of a home from a builder-vendor to a buyer for use as a primary residence. " Id. In supporting the individual homeowner's right to maintain a consumer fraud action, the Court noted that "The general trend in Illinois has been to allow consumers greater protection by equalizing the contractual relationship between consumers and manufacturers. No where has this been more evident than in the sale of new homes from a builder-vender to a consumer-purchaser." Id. at 208-9. According to *Falcon*, there is absolutely no merit to Herman's argument that the Miller's cannot allege consumer fraud.

The argument that an individual owner could not maintain claims for consumer fraud was also rejected in *Pappas v. Pella Corp.*, 363 Ill. App.3d 795, 844

11

N.E.2d 995 (2006).² In <u>Pappas</u>, Pella is subject to a class action based on allegations of defective windows installed in personal residences. 844 N.E.2d at 997. The lawsuit claims damages resulting from defective windows that allowed water to enter the residence, and for damages resulting from wood rot and deterioration. <u>Id.</u> at 800. Pella claimed that the counts involving consumer fraud should be dismissed because they merely involved contractual allegations and concerns. <u>Id.</u> The Court rejected this argument because the complaint sufficiently plead that Pella knew its windows allowed water to enter the residence, and failed to disclose these facts. <u>Id.</u>

The Complaint alleges that Herman made false representations to the detriment of the Millers. (Compl't, Paras. 49-50) These allegations go beyond mere contractual concerns. As stated in <u>Falcon</u> and <u>Pappas</u> the Millers have a right to pursue claims for damages to their residence pursuant to the Consumer Fraud Act. Herman's Motion for Summary Judgment should be denied.

**THE PLAINTIFFS DID NOT WAIVE ANY RIGHTS**

Herman cites three cases to support his argument that the Miller's claims are moot and waived. All three are clearly distinguishable. Two of the cases, <u>Hayman v. Autohaus on Eden, Inc.</u>, 315 Ill. App. 3d 1075, 734 N.E.2d 1012 (2000) and <u>Huss v. Sessler For, Inc.</u>, 343 Ill. App. 3d 835, 799 N.E.2d 444 (2003) involve contracts for cars. In both cases, the plaintiffs sought damages for alleged consumer fraud. In <u>Hayman</u>, the plaintiff filed suit because there was an added

---

² This case is still pending in the Circuit Court of Cook County, Illinois under case number 06 L 12771.

service fee on a car lease contract. *Hayman* at 1013. The dealer tendered the total fee to the plaintiff within two days of the dispute. Id. The court ruled the suit was rendered moot. Id. at 1014. In *Huss*, the plaintiff did not receive a customized van within the promised time frame. *Huss* at 446. The dealer offered to buy the van back, refund all payments made by the plaintiff, and pay reasonable attorneys fees as called for under the Illinois Consumer Fraud Act. Id. Basing its opinion on *Hayman*, the *Huss* court similarly held the case was moot. Id. at 449.

Neither case is factually similar to the case at bar. In both cases, there was an amount certain tendered for a specific ascertainable damage less than five weeks after the alleged damage took place. In his Motion, Herman states that he "offered Miller during the Spring of 2005 to provide the full remedy he was due." This is too little too late. Up to this point, the Millers had dealt with a myriad of promises and attempts at repair. How can the Millers be sure that the result of his offer to address their "complaints of faulty construction" will be a true repair after so many failed efforts? Herman had the opportunity to repair the residence, and his solution was to merely caulk the windows. The cost to the Millers may include costs to them more than the concrete and caulking it will cost Herman to make another attempt at repair. Their case is nothing like *Hayman* and *Huss*. The ongoing damages are hardly an amount certain. Their case is not rendered moot by Herman's late proffer of unspecified repairs. This is a factual matter for a jury to decide.

13

The case Herman cites to attempt to show the measure of damages is the cost of repair supports Miller's position. <u>Arch of Ill., Inc. v. S.K. George Painting Contractors, Inc.</u>, 288 Ill. App. 3d 1080, 681 N.E.2d 1049 (1997) makes clear that the question of the cost of repair for negligent construction is a matter for the jury. There, in its ruling on a case where paint began to peel off a newly painted manufacturing plant, the court stated: "We express no opinion on whether the facts justify damages for cost of repairs or diminution in value. This is a question for the jury to decide after hearing the evidence and applying the law to the facts." <u>Id.</u> at 1051. Miller's claims can hardly be barred as moot or waived where a jury must decide. Assessing damage is not an appropriate issue for summary judgment.

## CONCLUSION

This Court previously ruled that the windows are consumer products. Nothing contained in the Defendants' Motions should change that result. The Plaintiffs have the right to pursue consumer fraud claims against Herman, and they have not waived any rights or remedies. The Motions to Dismiss and for Summary Judgment should be denied.

                    Respectfully Submitted,
                    for the Plaintiffs

                    /s/ Thomas R. Stilp

Thomas R. Stilp (#06198439)
John N. Bielski II (#6242527)
Messer & Stilp, Ltd.
166 W. Washington, Suite 300
Chicago, IL 60602
(312) 334-FIRM (3476)
(312) 334-3434 (Fax)
stilp@messerstilp.com
bielski@messerstilp.com